FEDERAL DEPOSIT INSURANCE CORP. as Receiver of Central Bank, Plaintiff,

v.

CROMWELL CROSSROADS ASSOCIATES, LTD. PARTNERSHIP, et al., Defendants.

No. 3:93CV00691(DJS).

United States District Court, D. Connecticut.

March 29, 2007.

Darcy McGraw, Zeisler & Zeisler, P.C., Bridgeport, CT, Michael F. Dowley, Dowley & Associates, Middletown, CT, Kerry Marc Wisser, Weinstein & Wisser, P.C., West Hartford, CT, David A. Hill, Jr., Ford & Paulekas LLP, Hartford, CT, Ross G. Fingold, Levy & Droney, P.C, Farmington, CT, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SQUATRITO, District Judge.

Now pending before the court is a motion by the Plaintiff, C.C. Cromwell Limited Partnership ("the Plaintiff"), to enforce a stipulated judgment against Robert E. Coughlin, Jr. and Thomas E. Coughlin ("the Coughlin Defendants") that the court approved of almost thirteen years ago. For the reasons stated herein, the Plaintiff's Revised Motion to Enforce Stipulated Judgment (dkt.# 82) is **DENIED** insofar as it pertains to Robert E. Coughlin, Jr. and **DENIED without prejudice** insofar as it pertains to Thomas E. Coughlin.

## I. CASE HISTORY

This case arose out of a commercial loan transaction between the Cromwell Crossroads Associates Limited Partnership ("Cromwell Crossroads") and Central Bank pursuant to which Central Bank made a construction loan to Cromwell Crossroads in the amount of $5,844,000. The loan was: (1) evidenced by a loan agreement and promissory note; and (2) secured by a mortgage on real property, known as the Cromwell Crossroads Shopping Center in Cromwell, Connecticut, and a security interest in certain personal property at that location. In addition, the loan was individually, jointly, and severally guaranteed by the Coughlin Defendants.[1]

On April 1, 1993, the Federal Deposit Insurance Corp. ("FDIC"), acting as Central Bank's receiver, brought this action, claiming that the promissory note was in default. In this action, FDIC sought: foreclosure on the mortgage; foreclosure on the security interest; immediate possession of the foreclosure property; a deficiency judgment; judgment granting the FDIC the right to collect any rents and profits accruing from the property; and enforcement of the obligations of the Coughlin Defendants under the guaranty.[2] At some point in this case, C.C. Cromwell Limited Partnership acquired ownership of the above-mentioned note and mortgage. Therefore, on December 20, 1993, counsel for FDIC moved for an order substituting C.C. Cromwell Limited Partnership as the Plaintiff in this case, (dkt.# 58), which the court granted on January 4, 1994.

On August 6, 1993, the court entered a judgment of strict foreclosure, which was subsequently re-opened on several occasions (November 10, 1993; November 12, 1993; December 20, 1993; and January 4, 1994). On January 13, 1994, Cromwell Crossroads filed a voluntary Chapter 11 bankruptcy petition, which stayed this foreclosure action. On April 26, 1994, the Bankruptcy Court, by the Honorable Robert L. Krechevsky, dismissed Cromwell Crossroad's bankruptcy petition, thus lifting the stay. The Plaintiff then moved for a judgment of strict foreclosure (dkt.# 65), which the court granted. On June 7, 1994, the Honorable F. Owen Eagan, U.S. Magistrate Judge, approved and recommended a judgment of strict foreclosure in favor of the Plaintiff and against the Coughlin Defendants, which was approved and entered by the Honorable José A. Cabranes, then a U.S. District Court Judge, on June 10, 1994. (*See* dkt. # 66.)

In the judgment of foreclosure, the court held that the Coughlin Defendants were in default for failure to plead and otherwise

---

1. The remaining defendants named in the Amended Complaint were a junior mortgagee and the various commercial tenants occupying the units as the Cromwell Crossroads Shopping Center.

2. FDIC also requested attorney's fees and costs, and any "equitable relief" that the court deemed just and proper.

defend this action. (*See id.*) The court found that the amount of debt owed to the Plaintiff for the loan in question was $6,104,271.16, calculated as of July 31, 1993; and that the value of the premises at issue was $3,900,000.00 as of August 6, 1993, which was the date of the original hearing on the Plaintiff's Motion for Judgment of Foreclosure. (*See id.*) The court then decreed that: (1) unless Cromwell Associates paid the amount owed to the Plaintiff on or before June 13, 1994, it would be barred and foreclosed from redeeming the premises in question; (2) if Cromwell Crossroads failed to pay the amount owed to the Plaintiff, the Coughlin Defendants, as guarantors, shall pay on or before June 14, 1994, that amount; (3) if the Coughlin Defendants failed to make such payment, then the remaining defendants, as named in the Amended Complaint, shall, on or before June 15, 1994, pay to the Plaintiff the amount owed on or before June 15, 1994; (4) if those remaining defendants failed to make payment, then the Coughlin Defendants or Coughlin & Company shall, on or before June 16, 1994, pay to the Plaintiff the amount owed; (5) all the defendants, and all persons claiming possession of the premises in question through any of the defendants, shall deliver possession of the premises to the Plaintiff or any defendant that redeemed according the judgment; (6) and if all defendants fail to redeem, title shall vest in the Plaintiff on June 17, 1994. (*See id.*)

The Plaintiff, on July 5, 1994, moved for a deficiency judgment against Cromwell Crossroads and the Coughlin Defendants, claiming that no owner of the equity of redemption in the premises redeemed on the dates set forth in the court's judgment, and that title to the premises vested in the Plaintiff on June 17, 1994. (*See* dkt. # 68.) The Plaintiff further claimed that the Coughlin Defendants were liable for a per-centage of the deficiency based upon a guarantee agreement, dated June 22, 1987, which was modified by a guarantee modification on October 3, 1988. (*See id.*) Before the court ruled on this motion, though, the parties reported that the case had settled, which the court noted in an Order and Notice to Counsel. (*See* dkt. # 70.)

The parties subsequently filed paperwork regarding the stipulated settlement. On October 19, 1994, Magistrate Judge Eagan accepted and approved the Stipulation Re: Deficiency Judgment, ("Stipulated Judgment") which Judge Cabranes, now a U.S. Circuit Court Judge sitting by designate, approved on October 21, 1994. (*See* dkt. # 72). In that stipulation, the parties agreed to, among other things, the following: (1) the judgment against the Coughlin Defendants would be considered satisfied if the Coughlin Defendants made the following payments: the sum of $75,000.00, without interest, to be paid in equal quarterly payments, by certified check or bank check, in the amount of $1,250.00 for the first five years, commencing on April 1, 1995 and continuing on July 1, 1995, October 1, 1995, January 1, 1996, and through January 1, 2000, and thereafter equal quarterly payments, by certified check or bank check, in the amount of $2,500.00 commencing on April 1, 2000, with the last payment being due and owing on January 1, 2005, at which time the entire sum of $75,000.00 should have been paid; (2) the Coughlin Defendants would be entitled to a ten (10) day grace period for the above-mentioned payments before they were considered in default; (3) if the Coughlin Defendants, otherwise complying with the provisions of the stipulation, should make payments totaling $50,000.00 on or before July 1, 1997, the entire judgment would be considered satisfied; (4) if the Coughlin Defendants were to default

on their obligations as set forth in the stipulation, the Plaintiff would thereafter notify the court that the "Stipulated Motion to Reopen Judgment" (dkt.# 73) shall be granted; the amount of the judgment would be considered $1,900,000.00, less any payments made by the Coughlin Defendants to the Plaintiff; the Plaintiff would be entitled to take all available action to execute the judgment; and the interest would begin to run on the unpaid part of the judgment at the interest rate of 24% or the highest amount allowed by Connecticut law. (*See id.*)

The parties also filed a "Stipulated Motion to Reopen Judgment" ("Stipulated Motion") (dkt.# 74), which is referenced in the Stipulated Judgment. In the Stipulated Motion, the parties agreed that: (1) the judgment in this case shall be automatically reopened by the Stipulated Motion if there are any defaults by the Coughlin Defendants under the terms of the stipulated judgment; and (2) the Stipulated Motion could be granted at any time through December 31, 2005. (*See id.*) Magistrate Judge Eagan accepted and approved of the Stipulated Motion on October 19, 1994. Finally, the parties also filed a "Motion Re: Retention of File," ("Stipulated Retention"), in which the parties agreed that the file in this case shall be retained by the court through December 31, 2005 and not destroyed until after December 31, 2005. (*See* dkt. # 73.) On October 19, 1994, Magistrate Judge Eagan accepted and approved the Stipulated Retention, which Judge Cabranes approved on October 21, 1994. (*See id.*)

On December 1, 2005, the Plaintiff filed a motion to enforce the Stipulated Judgment. (Dkt.# 77.) In its motion, the Plaintiff represented that the Coughlin Defendants were in default pursuant to the terms of the Stipulated Judgment by failing to make the installation payments, be-

ginning with the payment due on October 1, 1995. (*See id.*) The Plaintiff requested that the court enter a deficiency judgment in favor of the Plaintiff and against the Coughlin Defendants in the amount of $5,717,048.50, which represents $1,900,000.00 in principal and $3,817,048.50 in interest. (*See id.*) In support of its motion to enforce the Stipulated Judgment, the Plaintiff submitted the affidavit of Robert J. Rieger ("Reiger"), who is the president of the Plaintiff. (*See* dkt. # 78.) In his affidavit, Rieger stated that the amount due under the deficiency judgment was $6,006,340.43, which represents $1,896,400.00 in principal ($1,900,000.00 minus a $3,600.00 credit for payments made) and $4,109,940.43 in interest at a rate of 24% from October 1, 1995 through May 24, 2004. (*See id.*)

Before the court ruled on Plaintiff's motion, Plaintiff, on December 30, 2005, moved for an extension of time, requesting that, to the extent that the court deemed it necessary to take further action with regard to the Stipulated Judgment or the Stipulated Motion, the court take such action after December 31, 2005. (*See* dkt. # 79.) On January 4, 2006, the court granted this motion. (Dkt.# 80.) That same day, the court also denied, without prejudice, the Plaintiff's motion to enforce the Stipulated Judgment. (Dkt.# 81.) The court denied the Plaintiff's motion because, with regard to the amount of the judgment to be entered, it conflicted with Rieger's affidavit. (*See id.*) Nevertheless, the court permitted the Plaintiff to re-file its motion to enforce the Stipulated Judgment on or before January 31, 2006. (*See id.*)

On January 31, 2006, the Plaintiff re-filed its motion to enforce the Stipulated Judgment with an affidavit from Rieger. (Dkt.# 82.) In both the motion and the affidavit, the Plaintiff represents that the total amount due under the deficiency

judgment is $6,006,340.43, which represents $1,896,400.00 in principal ($1,900,-000.00 minus a $3,600.00 credit for payments made) and $4,109,940.43 in interest at a rate of 24% from October 1, 1995 through January 12, 2005. *(See id.)* The Coughlin Defendants did not file their response to the Plaintiff's motion within twenty-one (21) days, as required by Rule 7(a) of the Local Rules of Civil Procedure. On April 6, 2006, the court ordered that, on or before June 9, 2006, the Coughlin Defendants file a written response showing cause why the Plaintiff's motion should not be granted. *(See* dkt. # 83.) In the order, the court stated that if the Coughlin Defendants did not file their response, the court could grant the Plaintiff's motion and enter judgment against the Coughlin Defendants in the amount of $6,006,340.43. *(See id.)* On June 9, 2006, the Coughlin Defendants [3] filed their memorandum in opposition to the Plaintiff's motion to enforce the Stipulated Judgment. (Dkt.# 86.)

## II. ANALYSIS

In their memorandum in opposition to Plaintiff's motion to enforce the stipulated judgment, the Coughlin Defendants concede that they have been in default under the terms of the stipulated judgment since October 1, 1995. Nevertheless, the Coughlin Defendants assert that the Plaintiff's motion should be denied because: (1) the court lacks the authority to grant the Plaintiff's motion; (2) based on equitable principles, the Plaintiff's delay in seeking enforcement of the stipulated judgment bars the relief sought; (3) the Plaintiff is not entitled to proceed against Robert E. Coughlin, Jr., who died on June 12, 2004; and (4) the amount sought by the Plaintiff is "grossly inflated." The court shall address the Coughlin Defendants' arguments seriatim.

## A. JURISDICTION OF THE COURT

The Coughlin Defendants' first argument is that the court now lacks the authority to enforce the terms of the Stipulated Judgment. The Coughlin Defendants claim that the parties specifically authorized the court to open and modify the Stipulated Judgment only until December 31, 2005, and that the court approved this stipulation. According to the Coughlin Defendants, "[u]nder the terms of the Stipulated Motion to Reopen Judgment, the Stipulated Judgment could be opened and modified *only through December 31, 2005.* Likewise, the parties further stipulated that the Court could retain jurisdiction over the file *only until December 31, 2005* (Docket # 73), which stipulation was accepted and approved by the Court on October 21, 1994." (Dkt.# 86) (emphasis in original). In addition, the Coughlin Defendants maintain that the Stipulated Judgment itself states that it may not be modified orally, but in writing executed by each of the parties. *(See id.)* Thus, the Coughlin Defendants claim that the extension granted to the Plaintiff to refile its motion to enforce "was, and is, a nullity." *(Id.)* The court disagrees with the Defendant's contentions here.

■ The court begins by noting that "[a]s a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees." *Dulce v. Dulce,* 233 F.3d 143, 146 (2d Cir.2000) (internal quotation marks omitted). "This includes proceedings to enforce the judgment." *Id.*

---

**3.** On June 9, 2006, counsel for the Coughlin Defendants filed a Statement of Fact of Death, which represented that defendant Robert E. Coughlin, Jr. had died on June 12, 2004.

"Without ancillary jurisdiction to enforce judgments, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Id.* (internal quotation marks omitted). The parties do not dispute that the court had such ancillary jurisdiction over this case, but they do dispute whether that jurisdiction has expired.

### 1. The Stipulated Motion to Reopen Judgment

■ With respect to the Stipulated Motion, the court first points out that the Coughlin Defendants' statement that the Stipulated Motion "could be opened and modified only through December 31, 2005" is incorrect because the Stipulated Motion does not, in fact, say this. Regarding the timing of re-opening this case, the language of the Stipulated Motion is as follows: "This stipulated motion can be granted at any time through December 31, 2005." (Dkt.# 74.) Nowhere does the Stipulated Motion say that it could be granted *only* through December 31, 2005.

The Coughlin Defendants do not dispute that the Stipulated Motion could be granted at any time through December 31, 2005. The Coughlin Defendants argue, though, that after that date, nothing more could be done, either by the parties or the court, in this case. The court strongly disagrees with the Coughlin Defendants' reasoning. By the Coughlin Defendants' logic, then, the Plaintiff could have filed its motion on December 31, 2005, but if the court did not rule on the motion that very day (i.e., on or before 11:59 p.m. on December 31, 2005), the Plaintiff's carriage

would turn into a pumpkin and the court would lose jurisdiction. The court finds this to be an overly rhadamanthine reading of the Stipulated Motion. The court need not, however, dissect this reasoning of the Coughlin Defendants. As the court shall demonstrate below, the Stipulated Motion had been activated, and this case had already been re-opened, before December 31, 2005, despite the fact that the court had not ruled on the Plaintiff's motion to enforce prior to that date.

According to the Stipulated Motion, the parties "stipulate[d] and agree[d] that the Judgment in this matter ... shall be automatically reopened by this Motion if there are any defaults by the Coughlin Defendants under the terms of the Judgment...." (Dkt.# 74.) The Plaintiff filed its motion to enforce the Stipulated Judgment on December 1, 2005. Under the terms of the Stipulated Motion, the Plaintiff's filing of its motion to enforce was sufficient to trigger the Stipulated Motion and automatically re-open the Stipulated Judgment.[4]

The court did not, however, immediately act upon Plaintiff's request to enforce the Stipulated Judgment, which is a separate issue from the re-opening of this matter. Thus, on December 30, 2005, the Plaintiff filed its motion for extension of time (dkt.# 79), which the court granted. In the court's view, the motion for extension of time was not an attempt to modify the terms of the Stipulated Judgment. Rather, the Plaintiff was requesting clarification from the court that, as the Plaintiff had moved to enforce the Stipulated Judg-

---

**4.** The court points out that it is being generous here, for the language of the Stipulated Motion does not require the Plaintiff to file anything with the court to re-open this matter. The Stipulated Motion states that the Stipulated Judgment "shall be automatically reopened ... if there are any defaults by the

[Coughlin] Defendants under the terms of the Judgment...." (Dkt.# 74.) Under a strict reading of this language, this matter was automatically re-opened in 1995, when the Coughlin Defendants defaulted under the Stipulated Judgment.

ment, the court would not refuse to adjudicate the issue simply because such adjudication went beyond the December 31, 2005 date. The December 31, 2005 date was, however, irrelevant at that point because the Stipulated Judgment had already been re-opened. Once the Stipulated Judgment was reopened, the court, no longer limited by the December 31, 2006 date, was free to take whatever time necessary to determine what relief the Plaintiff could receive. To say that such a determination made after December 31, 2005 would be a "modification" of the Stipulated Judgment, even though the matter had already been re-opened, is not logical and not supported by language in the Stipulated Motion.

As there was, presumably, a typographical error in the Plaintiff's motion to enforce, the court denied the Plaintiff's motion without prejudice and allowed the Plaintiff to re-file its motion on or before January 31, 2006. The Coughlin Defendants have pointed to no law stating that the court was not permitted to do so. Indeed, considering that this matter had already been re-opened, the court is not aware of any rule or case law saying that it cannot permit a party to re-file a motion that was denied without prejudice.

On January 31, 2006, the Plaintiff did re-file its motion to enforce. Again, the re-opening this matter is a separate issue from that of the specific relief sought in the Plaintiff's motion to enforce. The former deals with when this case was reactivated, which, based on the court's analysis above, had occurred before December 31, 2005; the latter deals with the relief, if any, to which the Plaintiff is entitled.

### 2. The Motion Re: Retention of File

■ With respect to the Coughlin Defendants' contention that the parties further stipulated (and the court accepted), via the Stipulated Retention, that the court could retain jurisdiction over the file only until December 31, 2005, the court disagrees with the Coughlin Defendants. The Stipulated Retention (dkt.# 73) states that "this file shall be retained by the Court through December 31, 2005 as the Judgment requires payments to be made by the [Coughlin] Defendants through that date." In the court's view, the Stipulated Retention is merely a grant of the parties' request that, if at some point the court were to destroy the physical file for this case, such destruction not take place until after December 31, 2005. That is, the Stipulated Retention is an order relating to the court's internal management of its own files, not a restriction on the court's jurisdiction over the case. Nowhere in that document does it state that the court loses jurisdiction over this case after December 31, 2005. Indeed, the Stipulated Retention does not even contain the word "jurisdiction." Therefore, the court rejects the Coughlin Defendants' contention that the Stipulated Retention, in any way, limited the court's jurisdiction over this case.

### 3. Service of the Plaintiff's Motion for Extension of Time

■ The Coughlin Defendants also argue that the Plaintiff's motion for extension of time (dkt.# 79) was served upon Michael F. Dowley, Esq., who was the Coughlin Defendants' counsel at the time the Stipulated Judgment was entered, but has not represented the Coughlin Defendants for many years. The Coughlin Defendants claim that "given the time gap since the entry of the Stipulated Judgment ..., the service of the Motion for Extension of Time upon the parties' former attorney was not effective...." Based upon the court's determinations above, though, the court does not see how this argument supports the removal of the court's jurisdiction over this matter. The Stipulated

Motion did not state that the Stipulated Judgment could not be re-opened until the Coughlin Defendants had been served with a motion. Instead, the Stipulated Motion allowed for the Stipulated Judgment to be re-opened upon the Coughlin Defendants' default. The Coughlin Defendants were in default, and the Plaintiff put the court on notice of this default. Thus, the Stipulated Judgment had already been re-opened when the Plaintiff filed the motion for extension of time. Of course, the court would allow the parties ample time to receive documents and make their arguments.[5] Nevertheless, the court did not lose jurisdiction over this matter because the Plaintiff's motions were served upon the Coughlin Defendants' former attorney.

The court thus wholly rejects the Coughlin Defendants' arguments regarding the court's jurisdiction over this case. It is true, as the Coughlin Defendants point out, that the court should not modify the terms of a judgment to which the parties have agreed and the court has approved. Here, however, the court is not "modifying" the terms of the Stipulated Judgment, the Stipulated Motion, or the Stipulated Retention; rather, it is complying with those terms. Consequently, the court retains jurisdiction over this matter and shall reach the merits of the Plaintiff's and the Coughlin Defendants' remaining arguments.

## B. LACHES

The Coughlin Defendants next claim that, although there is no dispute that the Coughlin Defendants have been in default since 1995, the Plaintiff is barred from recovery because it has waited more than ten years to seek relief. The Coughlin Defendants' argument here is based upon the equitable doctrine of laches.

"Laches is based on the maxim, 'vigilantibus non dormientibus aequitas subvenit,' meaning 'equity aids the vigilant, not those who sleep on their rights.'" *Ikelionwu v. United States,* 150 F.3d 233, 237 (2d Cir.1998) (quoting *Ivani Contracting Corp. v. City of New York,* 103 F.3d 257, 259 (2d Cir.1997)). "It is an equitable defense that bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Id.* (internal quotation marks omitted). "A party asserting the defense of laches must establish that: (1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Id.* "The determination of whether laches bars a plaintiff from equitable relief is entirely within the discretion of the trial court, and as such, will only be disturbed upon a showing of an abuse of discretion." *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 193 (2d Cir.1996) (internal quotation marks omitted).

The court finds that the doctrine of laches does not bar the Plaintiff from relief here. "A party asserting an equitable defense such as laches must demonstrate that it comes before the court with clean hands." *Eppendorf-Netheler-Hinz GmbH v. National Scientific Supply Co., Inc.,* 14 Fed.Appx. 102, 105 (2d Cir.2001); *see Frankel v. Cent. Moving & Storage Co., Inc.,* No. 95 CV. 6330(BN), 1997 WL 672003, at *4 (S.D.N.Y. Oct. 29, 1997) ("To prove the equitable defense of laches, defendant must show ... good faith conduct on the part of the defendant."). The Coughlin Defendants have not conducted themselves in complete good faith. They agreed to the terms of the Stipulated

---

**5.** As counsel for the Coughlin Defendants points out, Attorney Dowley's office forward-ed the Plaintiff's post-judgment motions to Thomas Coughlin.

Judgment, which provided that the Coughlin Defendants were to make a number of payments to the Plaintiff. The Coughlin Defendants failed to make most of these payments, and have offered no excuse for this failure. Because the court does not believe that the Coughlin Defendants come before the court with clean hands, their laches defense fails.

The court also points out that, as seen in the terms of the Stipulated Judgment and Stipulated Motion, the parties contemplated and anticipated that this matter would stretch well beyond the date on which those documents were executed. Pursuant to the Stipulated Judgment, the Coughlin Defendants' last payment to the Plaintiff was due on or before January 1, 2005. Under the Stipulated Motion, this case could be re-opened on or before December 31, 2005, almost a year after the due date of the last payment. The court fails to see, then, how the Coughlin Defendants were unfairly surprised by the Plaintiff's actions. The Coughlin Defendants themselves knew that this matter could potentially be re-opened in 2005. In fact, in the Stipulated Motion, they specifically waived the Federal Rules of Civil Procedure with regard to the time allowed for re-opening judgment and agreed to allow this matter to be re-opened until the end of 2005. The fact that the Plaintiff's demands regarding interest might be excessive is something the court shall address when determining the amount owed to the Plaintiff; it does not preclude the Plaintiff from relief altogether. Consequently, the court rejects the Coughlin Defendants' laches argument.

### C. DEATH OF ROBERT E. COUGHLIN, JR.

■ The Coughlin Defendants next assert that the Plaintiff is not entitled to proceed against Robert E. Coughlin, Jr. ("Robert Coughlin") because Robert Coughlin, one of the Coughlin Defendants, is dead. The court agrees with the Coughlin Defendants.

■ Obviously, a plaintiff cannot enforce a judgment against a dead man himself. Instead, if a defendant dies, the plaintiff must proceed against the deceased's estate. To proceed against an estate in a civil action, a plaintiff must somehow substitute the deceased's estate for the deceased. Rule 25 of the Federal Rules of Civil Procedure governs the substitution of parties in civil cases. With regard to the substitution of parties on account of death, Rule 25 states the following:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. *Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.*

Fed.R.Civ.P. 25(a)(1) (emphasis added). "The running of the 90 days commences with the proper suggestion of death." *George v. United States,* 208 F.R.D. 29, 31 (D.Conn.2001). "Rule 25(a)(1) 'requires that the statement of death be served on the involved parties.'" *Id.* (quoting *Unicorn Tales, Inc. v. Banerjee,* 138 F.3d 467, 470 (2d Cir.1998)). "[T]wo affirmative steps are necessary in order to trigger the running of the 90 day period." *Id.* "First,

death must be formally suggested upon the record." *Id.* (citing *Barlow v. Ground,* 39 F.3d 231, 233 (9th Cir.1994)). "Next, 'the suggesting party must serve other parties and nonparty successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute.'" *Id.* (quoting *Barlow,* 39 F.3d at 233).

On June 9, 2006, the Coughlin Defendants filed a Statement of Fact of Death ("the Statement") (dkt.# 85), which informed the court and the Plaintiff that Robert Coughlin died on June 12, 2004. Whether or not the Plaintiff had actual knowledge of Robert Coughlin's death before the Coughlin Defendants filed the Statement is irrelevant. In the Statement, the Coughlin Defendants certified that a copy of the Statement was served upon the Plaintiff's counsel via First Class mail, thus complying with Rule 5 of the Federal Rules of Civil Procedure. The Statement was also docketed and entered onto the court's electric filing system on June 9, 2006. Rule 25 then required the Plaintiff to file a motion for substitution no later than ninety days after the Robert Coughlin's death was "suggested on the record" by service of the Statement. To date, the Plaintiff has filed no motion for substitution. Rule 25 dictates that, if no motion for substitution is filed within that ninety days, the action shall be dismissed as to the deceased party. Therefore, the Plaintiff is barred from proceeding against Robert Coughlin. Consequently, because the Plaintiff has not complied with the requirements of Rule 25 and can no longer obtain the relief sought from Robert Coughlin, this action, as it pertains to Robert Coughlin, is dismissed, and the Plaintiff's motion, insofar as it pertains to Robert Coughlin, is **DENIED.**[6]

### D. AMOUNT SOUGHT BY THE PLAINTIFF

The Coughlin Defendants next challenge the Plaintiff's claim by arguing that the amount sought by the Plaintiff is "grossly inflated." First, the Coughlin Defendants maintain that the Plaintiff is not entitled to any interest at all because the Stipulated Judgment is "inconsistent in regard to the modified judgment that may be rendered if there is a default by the defendants." Second, the Coughlin Defendants argue that, if the court concludes that the Plaintiff is entitled to interest, the interest rate used by the Plaintiff in its calculation is too high and should be lower. The court disagrees with the Coughlin Defendants insofar as they claim that the Stipulated Judgment is

---

**6.** The court rejects the Coughlin Defendants' arguments regarding the Plaintiff's alleged failure to comply with the court's April 6, 2006 order by not personally serving copies of the court's order and the Plaintiff's moving papers (dkt. # s 77, 78, 82) upon the Coughlin Defendants. First, the purpose of the court's order regarding the service of the order and the Plaintiff's moving papers was to ensure that, as this case had remained dormant for approximately ten years, the Coughlin Defendants were aware of the existence and substance of that order and those moving papers. It is clear that the Coughlin Defendants were aware of the court's order and of the Plaintiff's contentions because the Coughlin Defendants filed their response to the Plaintiff's motion to enforce on June 9, 2006, which is the deadline the court had set. Second, the Coughlin Defendants have not supported their arguments with any affidavits. Counsel for the Coughlin Defendants merely represents that, from the papers Thomas Coughlin made available to counsel, it appears that the Plaintiff's Revised Motion to Enforce the Stipulated Judgment (dkt.# 82) was not served upon Thomas Coughlin. This representation (which does not say that the revised motion was not actually served, but rather that it appears that the revised motion was not served), is insufficient to establish that the revised motion to enforce was, in fact, not served.

inconsistent with regard to the amount to which the Plaintiff's are entitled. The court agrees, however, that the interest rate used by the Plaintiff in its calculations is too high and that the interest sought by the Plaintiff is excessive.

 The Coughlin Defendants' first argument, that the Stipulated Judgment is inconsistent, is rejected. The Coughlin Defendants contend that the Plaintiff is not entitled to relief because that Paragraph 7 of the Stipulated Judgement, which speaks in terms of re-opening the judgment, mentions that the court is to allow a judgment of $1,900,000.00 to enter, yet Paragraph 13 provides that, upon re-opening of the judgment, the judgment shall be considered to be $1,900,000.00 less any payments made. According to the Coughlin Defendants, this "inconsistency" bars recovery for the Plaintiff. The court disagrees. Paragraph 7 is not the portion of the Stipulated Judgment that details or controls the amount owed to the Plaintiff in the case of a default. Rather, Paragraph 7 is the portion of the Stipulated Judgment that incorporates the Stipulated Motion. With regard to the amount owed in the case of default, Paragraph 13 controls. The same argument applies to the Coughlin Defendants argument that the Plaintiff is not entitled to interest because only the $1,900,000.00, and not any interest, is mentioned in the Stipulated Motion. The Stipulated Motion does not, however, dictate what the amount of the judgment shall be. Instead, the Stipulated Motion is simply the tool by which the Stipulated Judgment may be re-opened. Again, the amount of the judgment is controlled by the Stipulated Judgment, and the amount owed in the case of the Coughlin Defendants' default is controlled by Paragraph 13 of the Stipulated Judgment.

 The Coughlin Defendants' second argument, that the amount sought by the Plaintiff is excessive, is, in the court's view, correct. Paragraph 13 of the Stipulated Judgment states the following:

> If [the Coughlin Defendants] do not ... perform their obligations under this stipulation, then [they] ... shall be considered to be in default of this stipulation and the Plaintiff will thereafter notify the Court that the Motion to Reopen Judgment shall be granted and the amount of the judgment shall be considered to be $1.9 million less any payments that were made.... At the time of default, interest shall begin to run on the unpaid part of the judgment set forth in paragraph 7 (i.e., on the amount consisting of $1.9 million minus any payments made against that amount) at the interest rate of 24% or the highest amount allowed by Connecticut law.

(Dkt.# 72, ¶ 13). The parties agree that, before they defaulted, the Coughlin Defendants made payments in the amount of $3,600.00. Thus, the deficiency judgment, without interest, would be $1,900,000.00 minus $3,600.00, or $1,896,400.00.

The amount of interest owed to the Plaintiff is still an unresolved issue, though. Absent any contrary provision, 28 U.S.C.A. § 1961(a), which "applies to federal judgments even where the federal court's jurisdiction rests on diversity of citizenship," would provide the standard rate for post-judgment interest. *In re Connaught Properties, Inc.*, 176 B.R. 678, 684 (Bkrtcy.D.Conn.1995) (collecting cases). Nevertheless, " '[w]hile 28 U.S.C. § 1961 provides a standard rate of post-judgment interest, the parties are free to stipulate a different rate, consistent with state usury and other applicable laws.' " *Id.* (quoting *Hymel v. UNC, Inc.*, 994 F.2d 260, 265–66 (5th Cir.1993)).

Here, the parties stipulated to a different rate. The Stipulated Judgment states that interest shall begin to run on the

unpaid portion of the judgment at an interest rate of 24% or the highest amount allowed under Connecticut law. Connecticut law does not allow for an interest rate of 24% in this matter. The applicable Connecticut law is Section 37–3a of the Connecticut General Statutes, which provides that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions …, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable." Conn. Gen.Stat. § 37–3a.[7] Connecticut courts have held that § 37–3a applies to post-judgment interest. *See Gionfriddo v. Avis Rent A Car System, Inc.*, 192 Conn. 301, 308, 472 A.2d 316 (1984); *D.A.N. Joint Venture v. Mead*, No. CV 890371058, 1999 WL 566885, at *1 (Conn.Super.Ct. July 26, 1999).

The Plaintiff has calculated and submitted to the court an amount of interest it believes it is owed on the unpaid portion of the Stipulated Judgment, but that amount was calculated at an interest rate of 24%. As the court noted above, that rate is excessive. The Coughlin Defendants, for their part, argued that the rate of interest should be 10%, but did not submit a calculation setting forth what the total amount of interest owed should be. Thus, the court shall not grant the Plaintiff's request to enforce the Stipulated Judgment at this time. Consequently, insofar as it pertains to Thomas E. Coughlin, the Plaintiff's motion to enforce the Stipulated Judgment is **DENIED without prejudice.** Nevertheless, the court shall afford the Plaintiff the opportunity to re-file its motion with a revised calculation. Therefore, the court orders the following: (1) **the Plaintiff shall re-file its motion to enforce the Stipulated Judgment on or before April 30, 2007; (2) in its re-filed motion to enforce, the Plaintiff shall include a calculation setting forth what the total amount of interest owed should be; (3) the Plaintiff's interest calculation shall use an interest rate of 10%; (4) the Coughlin Defendants shall file a response to the Plaintiff's re-filed motion to enforce on or before May 21, 2007; (5) in their response, the Coughlin Defendants shall state whether they accept or reject the Plaintiff's calculation for the amount of interest owed in this case; (6) if the they reject the Plaintiff's calculation, the Coughlin Defendants shall submit their own calculation, using an interest rate of 10%, setting forth what the total amount of interest should be.**

### III. CONCLUSION

For the foregoing reasons, the Revised Motion to Enforce Stipulated Judgment (dkt.# 82) is **DENIED** insofar as it pertains to Robert E. Coughlin, Jr. and **DENIED without prejudice** insofar as it pertains to Thomas E. Coughlin. **The Plaintiff shall re-file its motion to enforce the Stipulated Judgment on or before April 30, 2007. The Plaintiff's re-filed motion to enforce shall contain a calculation of interest that uses an interest rate of 10%. The Coughlin Defendants shall file a response to the Plaintiff's re-filed motion to enforce on or before May 21, 2007. If the Coughlin Defendants reject the Plaintiff's interest calculation, the Defendants shall submit their own interest calculation using an interest rate of 10%.**

The court also points out that in the "Motion to Substitute C.C. Cromwell Limited Partnership as the Plaintiff Pursuant

---

7. The court notes that § 37–3a was amended in 1983 to provide for a 10% interest rate. *See* 1983 Conn. Pub. Acts 83–267 § 1. Thus, for all times relevant to this case, § 37–3a provided for an interest rate of 10%.

to Fed.R.Civ.P. 25(c)", counsel for the FDIC requested that the caption of this action be changed to read "*C.C. Cromwell Limited Partnerships, plaintiff v. Cromwell Crossroads Associates Limited Partnership, et als.* [sic], defendants." (*See* dkt. # 58.) The court granted this motion on January 4, 1994, but it appears that the change in this action's title caption was not effected. Therefore, in order to avoid any confusion in the future, the court orders the following: (1) **the Clerk of the Court shall change the title caption in the docket for this case so that "Federal Deposit Insurance Corporation as Receiver of Central Bank" is removed and substituted with "C.C. Cromwell Limited Partnership" as the plaintiff;** (2) **all further submissions by the parties shall contain the following caption: "C.C. Cromwell Limited Partnership,** *Plaintiff,* **v.** *Cromwell Crossroads Associates Limited Partnership, et al.,* **Defendants."**